UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
SEP 07 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-446-GWU

HARALENE L. HELTON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Helton

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Helton

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) concluded that Helton suffered from "severe" impairments which restricted her to a limited range of light level work on or before the time her insured status expired in December, 2001. (Tr. 18, 23). While she was unable to perform her past relevant work, she was believed to be capable of performing significant numbers of light level jobs as identified by a vocational expert (VE). (Tr. 23). Thus, benefits were denied. (Tr. 24).

The VE had been confronted with a hypothetical question which included factors such as: (1) a restriction to light level exertion, (2) a need for an inside job out of temperature extremes, and (3) a need for a relatively dust-free environment. (Tr. 255). In response to these factors, the VE identified the specific jobs relied upon by the ALJ. (Id.)

The primary error is that no mental restrictions were included in the hypothetical. Previous administrative findings on a 1998 denial decision included references to several "limited but satisfactory" mental abilities. (Tr. 38). Despite the fact that a new consultative examiner referred to several "fair" mental abilities (Tr. 164) and a new medical reviewer who completed the only detailed mental capacity assessment form of record and made it with a view of the DLI (Tr. 199), cited a

7

number of "moderate" limitations (Tr. 199-200), absolutely no mental restrictions were taken into account by the recent VE.

The assessment of the plaintiff's physical status was also flawed, albeit not as strikingly as the mental assessment. The residual physical functional capacity factors cited to the current VE were at least compatible with the 1998 administrative findings (on a prior application) about Helton's physical residual functional capacity. (Compare Tr. 38 with Tr. 255). However, because there is an opinion from one treating source which appears to "relate back" to the pertinent period and suggested greater physical limitations due to the plaintiff's musculoskeletal problems, merely following the physical factors chosen by the last ALJ was inadequate.

Helton first sought medical attention in 2000 after a motor vehicle accident. X-rays of the lumbar spine showed a mild narrowing of the L5-S1 interspace and a mild degree of diffuse spondylosis throughout the lumbar spine. (Tr. 145). A CT scan later showed a moderate degree of diffuse bulging at the L3-4 and L4-5 disc interspaces, but no spinal stenosis. (Tr. 142, 143). Significantly, an MRI was performed in July, 2000; the results showed that there was a disc bulge at L4-5 and L3-4 resulting in ventral effacement of the thecal sac and minimal but present acquired central spinal stenosis; there was left greater than right concentric neural foraminal stenosis at these levels. (Tr. 230).

While the plaintiff was mainly treated at the Appalachian Regional Health Care system in 2000, she began to see Howard Lynd of Pain and Health

Helton

Management beginning in March, 2001. When he first saw the patient, he concluded that she was neurologically intact in the lower extremities, but had hyperalgesia to palpation over the lumbar paraspinous muscles and sciatic joints bilaterally, and pain on flexion, extension and lateral flexion. (Tr. 154). By April, her pain medication had brought improvement in her range of motion and the patient herself reported that her functional restrictions had increased significantly; while the doctor reported that "she is looking forward to return to the work force" albeit being concerned about "restrictions," he did not then express a personal opinion about what restrictions there would be. (Tr. 152). The patient reported significant pain in June, and her pain medication was increased. (Tr. 150-151). Pain was reportedly somewhat improved when the patient was seen the following month; it was noted that reflexes, gait, posture, muscle strength in the lower extremities were unremarkable, although there was an unspecified degree of decreased lumbar motion. (Tr. 148-149). While no functional restrictions were made clear in this particular exhibit, Lynd did subsequently complete a functional assessment some ten months after the DLI and after he had seen the patient on three more occasions--on the first two of which the patient reported being in severe pain. (Tr. 213, 214). In his last progress note, he referred to the patient's <u>longitudinal</u> history of having failed to response to numerous non-narcotic pain medications and noted that the plaintiff's Oxycontin medication level could not be reduced under the 80 mg. a day level without increasing her pain to a severe range. (Tr. 211). In the assessment form

9

Helton

itself, Lynd cited severe restrictions and referred only to the July, 2000 MRI results (Tr. 205), which would appear to "relate back" the assessment at least to the time he began to treat the plaintiff.

Not only was Lynd a treating source and referred to information within the pertinent period, but he was one of only two doctors to complete detailed assessment forms.[1] The other doctor, Dr. A. Dahhan, who actually saw the plaintiff after the DLI, cited restrictions which were also not included in the hypothetical question, either (e.g., never able to bend, squat, crawl, and only occasionally able to climb and reach over the shoulder as well as sit only five hours a day and no repetitive pushing/pulling) (Tr. 237); even if Dahhan's opinion was not entitled to binding weight, it certainly did not assist the Commissioner's version of the physical residual functional capacity.

Thus, the case must be remanded for further consideration.

This the ___7___ day of September, 2005.

*G. Wix Unthank*
G. WIX UNTHANK
SENIOR JUDGE

---

[1] While the first consultative examiner concluded that she had "the ability to perform activities involving sitting, standing, moving about, lifting, carrying, handling objects, hearing, seeing, speaking and traveling" (Tr. 158), this vague commentary did not negate the existence of some type of limitation.

10